NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE TRAVELERS INDEMNITY CO., | Civil Action No. 04-5699 (DRD) (MAS) |
| Plaintiff, | |
| v. | |
| DAMMANN & CO., INC., and INTERNATIONAL FLAVORS & FRAGRANCES, INC. | **OPINION** |
| Defendants. | |

**SHIPP, United States Magistrate Judge**

## I. INTRODUCTION

This matter comes before the Court through Defendant International Flavors & Fragrances, Inc.'s ("IFF") motion for leave to file a cross-claim against co-defendant Dammann & Co. ("Dammann").

## II. BACKGROUND

In January 2004, IFF received three shipments of vanilla beans from co-defendant Dammann, who originally received them from Cooperative Business International, Inc. ("CBI"). (Doc. No. 1 at ¶ 4.) On February 11, 2004, IFF received "industry information" from an unnamed source that the beans may have been contaminated with mercury. (Ex. A to Mot. to File Cross-cl. at ¶ 14, Feb. 8, 2008.) On March 29, 2004, IFF received the results of a laboratory report confirming the presence of mercury in the beans. (*Id.* at ¶ 16.) On April 1, 2004, IFF informed the Food and Drug Administration ("FDA") about the mercury content of the beans. (Doc. No. 57-12.) The FDA advised IFF that the

mercury content of the beans was not sufficiently high to pose a significant health risk. (*Id.*) However, because the "industry information" received by IFF indicated that the beans may have been *intentionally* injected with mercury by Indonesian farmers in order to increase their weight, the FDA ordered that the beans not be incorporated into any food product. (*Id.*)

On November 17, 2004, Travelers Indemnity Co. ("Travelers"), Dammann's insurer, filed a claim seeking a declaration of non-liability for IFF"s property damage and loss of use claims under the insurance policies Dammann held with Travelers. (Doc. No. 1.) Dammann filed a counter-claim seeking a declaration that Travelers was obligated to provide coverage on IFF's claims against Dammann, and brought additional counterclaims for breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. (Doc. No. 10.) On June 1, 2007, Travelers filed a motion for summary judgment, seeking a declaration of no coverage. (Doc. No. 57.) On February 11, 2008, Travelers' motion for summary judgment was denied by the Honorable Dickinson R. Debevoise, U.S.D.J. (Doc. No. 71.) Judge Debevoise's opinion held that IFF's property damage claims "are covered by (the Commercial General Liability policy) and that IFF's loss of use claims "may be covered by the Policies." (*Id.* at 14, 20.)

On February 8, 2008, IFF filed a notice of motion for leave to file a cross-claim against its co-defendant, Dammann, for the economic losses IFF sustained from the adulterated beans (including the cost of cleaning their machines, which were contaminated in the extraction process). (Ex. A to Mot. to File a Cross-cl.) IFF claims damages totaling $5,189,924.00. (*Id.* at ¶ 24.) For the reasons stated below, IFF's Motion for Leave to File a Cross-claim is denied.

2

## III. ANALYSIS

Federal Rule of Civil Procedure 15 (a)(2) states that a party seeking to amend their pleading after a responsive pleading has been served may do so "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15 (a)(2).

According to the Third Circuit's adoption of a liberal approach to the amendment of pleadings, "designed to ensure that a claim will be decided on the merits rather than on technicalities",

> . . . the allowance should not be automatic. Leave should be granted absent a showing of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.

*Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462 (D.N.J. 2001). "If the amendment would not withstand a motion to dismiss, leave must be denied." *Id.* citing *Miller v. Beneficial Management Corp.*, 844 F. Supp. 990, 1001 (D.N.J. 1993).

The question posed to this Court is whether the statute of limitations on IFF's claim has run, thus preventing their amendment from withstanding a motion to dismiss. IFF received the beans in January of 2004, but was not alerted to the possible defect in the beans until February 2004. (Ex. A to Mot. to File a Cross-cl. at ¶ 14.) IFF filed its Motion for Leave to file a Cross Claim on February 8, 2008. (*Id.*) Therefore, more than four years passed from the time that the goods were received until the action was filed; but less than four years passed from the time that the defect in the goods was discovered until the action was filed. The statute of limitations under the relevant portion of the Uniform Commercial Code ("UCC") is four years. (N.J. STAT. ANN. 12A:2-725) Therefore, the key

3

issue here is whether the cause of action accrued when the beans were accepted or when the defect was discovered.

The UCC states, in pertinent part, that "a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." N.J. STAT. ANN. 12A:2-725.

Therefore, unless the contract between Dammann and IFF contained an explicit warranty of future performance, the cause of action accrued when IFF accepted the beans, rather than when they became aware of the presence of mercury in the beans, and would therefore exceed the statute of limitations.

The Memorandum of Agreement between Dammann and IFF, signed by IFF's Executive Vice President of Global Operations, states "Seller guarantees that all chemical substances or mixtures of chemical substances sold to IFF hereunder comply with the Federal Toxic Substances Control Act." (Ex. D to Br. in Opp. to Mot. to File Cross-cl., Mar. 3, 2008.) IFF has not claimed that the mercury content of the beans violated the Federal Toxic Substances Control Act. Indeed, the FDA, after receiving information concerning the mercury content of the beans, stated that the mercury content was not high enough to pose a health risk. (Doc. No. 57-12.) As there was no explicit warranty of future performance, this Court finds that the cause of action accrued when delivery was tendered in January 2004, not when the defect in the beans was discovered in February 2004. As IFF did not seek leave to file a cross-claim until more than 4 years after this date, the statute of limitations has run on this claim.

4

This Court further finds that IFF has little excuse for its delay in bringing this cause of action. IFF received the results of a laboratory test confirming the presence of mercury in the beans on March 29, 2004. (Ex. A to Mot. to File Cross-Cl. at ¶ 16, Feb. 8, 2008.) In a letter dated May 25, 2004, Charles Weller, the Treasurer of IFF, made a formal demand of $5,189,924 to Dammann for damages incurred as a result of the contaminated beans. (Doc. No. 57-12.) This claim was not honored by Dammann. Dammann's insurer, Travelers, sought a declaration of non-liability against Dammann in November 2004. (Doc. No. 1.) IFF was aware of its potential claim against Dammann and could have filed its cross-claim against Dammann before February 8, 2008.

This undue delay becomes even more egregious in light of the April 27, 2007 scheduling order of Honorable Esther Salas, U.S.M.J., which stipulated that all opposition papers were to be filed by June 25, 2007, all reply papers were to be filed by July 2, 2007, and that discovery was to be completed by June 1, 2007. If IFF were granted leave to file a cross-claim, it would reopen discovery more than a year after it ended.

Finally, contrary to IFF's contentions, tort law does not preempt the UCC in this situation. IFF cites the New Jersey Product Liability Act ("NJPLA"), which entitles a claimant to damages, against a manufacturer or seller of a product, resulting from harm caused by a product "not reasonably fit, suitable or safe for its intended purpose." N.J. STAT. ANN. 2A:58C-2. Such "harm" is defined by the PLA as "physical damage to property, other than the product itself." N.J. STAT. ANN. 2A:58C-1(b)(2). IFF bases its claim to damages under the PLA on their assertion that they are seeking not a remedy for the defective product itself. N.J. STAT. ANN. 2A:58C-1(b)(2). IFF bases its claim to damages under the NJPLA on its assertion that it is not seeking a remedy for the defective product itself, but for

5

damages to IFF's other products which were rendered unmarketable by the incorporation of the adulterated beans. (Reply to Mot. to File a Cross-cl. at ¶5.) However, it is settled law in New Jersey that in the case of a buyer seeking damages for economic loss resulting from defective goods, the UCC preempts tort principles. *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 579 (1985)(holding that "a commercial buyer seeking damages for economic loss should only proceed under the UCC against parties in the chain of distribution" rather than seek tort remedies); *see also Alloway v. General Maritime Industries*, 149 N.J. 620 (1997)(extending this holding to consumer purchasers as well as commercial ones.) Therefore, while IFF is entitled to economic damages consequential to the breach of contract, they are limited to what they are entitled to under the UCC, not under NJPLA.

While some cases have recognized an exception to *Spring Motors'* holding where the product defect caused a "sudden and calamitous" accident that posed a serious risk to other persons or property (*see Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494 at 500 (D.N.J. 2000)), this exception does not apply here because IFF has not demonstrated that the beans, when incorporated into IFF's other products, posed a serious health risk to humans. Indeed, by IFF's own letter dated May 25, 2004, IFF admitted that "the FDA confirmed (that) no downstream action (product recall) was required." (Ex. A to Br. in Opp. to Mot. to File Cross-Cl., Mar. 3, 2008.)

For the reasons stated above, IFF's motion to file a cross-claim is denied.

Dated: August 13th, 2008

_____
HONORABLE MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE